1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10
11

| | |
|---|---|
| TERCEA T., | CASE NO. 3:24-cv-05971-DGE |
| Plaintiff, | ORDER AFFIRMING AND DISMISSING THE CASE |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

12
13
14
15
16

    Plaintiff seeks review of the denial of the Commissioner of Social Security's denial of her

application for Disability Insurance Benefits ("DIB").  As discussed below, the Court AFFIRMS

the Commissioner's final decision and DISMISSES the case with prejudice.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff was 55 years old when she applied for disability benefits, holds an associate's

degree, and previously worked as a respiratory therapist.  Administrative Record ("AR") 91,

243–244.  Plaintiff filed her application for DIB on October 26, 2021, alleging a disability onset

date of April 2, 2017.  AR 217–222.  Plaintiff's application was denied initially and on

1  reconsideration.  AR 91–102, 104–113.  Plaintiff's requested hearing was held before

2  Administrative Law Judge ("ALJ") Mark Triplett on September 8, 2023.  AR 57–89.  ALJ

3  Triplett held a supplementary hearing on October 25, 2023.  AR 36–56.  On November 17, 2023,

4  ALJ Triplett issued an order finding Plaintiff was not disabled pursuant to the Social Security

5  Act.  AR 14–30.  On September 30, 2024, the Appeals Council denied Plaintiff's request for

6  review.  AR 1–6.  On November 25, 2024, Plaintiff filed a complaint with this Court.  (Dkt. No.

7  1.)

8                                    **II.    LEGAL STANDARD**

9          The Court may reverse the ALJ's decision only if it is legally erroneous or not supported

10  by substantial evidence of record.  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).  The Court

11  must examine the record but cannot reweigh the evidence or substitute its judgment for the

12  ALJ's.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When evidence is susceptible to

13  more than one interpretation, the Court must uphold the ALJ's interpretation if rational.  *Ford*,

14  950 F.3d at 1154.  Also, the Court "may not reverse an ALJ's decision on account of an error

15  that is harmless."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

16                                    **III.    DISCUSSION**

17          In Plaintiff's opening brief, Plaintiff raises the following issues: (1) whether the ALJ

18  properly evaluated Plaintiff's subjective symptom testimony; and (2) whether the ALJ properly

19  evaluated the opinion of David Widlan, Ph.D.  (Dkt. No. 6.)  Plaintiff asks the Court to remand

20  this case for further proceedings.  (*Id.*)

21      **A.  Plaintiff's Symptom Testimony**

22          Plaintiff contends the ALJ erred in evaluating her symptom testimony with respect to her

23  fatigue, her mental health impairments, and her activities of daily living.  (*Id.* at 2–6.)

24

1    Where, as here, an ALJ determines a claimant has presented objective medical evidence

2    establishing underlying impairments that could cause the symptoms alleged, and there is no

3    affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to

4    symptom severity by providing "specific, clear, and convincing" reasons supported by

5    substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "The standard

6    isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that

7    it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

8    Here, Plaintiff testified she stopped working in 2017 due to a combination of physical

9    and mental impairments. AR 69. The ALJ found Plaintiff had the severe, medically

10   determinable impairments of autism spectrum disorder, chronic fatigue syndrome, depressive

11   disorder, anxiety disorder, and trauma. AR 19–20. The ALJ found Plaintiff's impairments could

12   reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements

13   concerning the intensity, persistence and limiting effects of these symptoms were not consistent

14   with the medical evidence and other evidence in the record. AR 23.

15   The ALJ found Plaintiff's testimony was inconsistent with her ability to engage in certain

16   activities of daily living, such as doing light house work, driving, shopping online, managing her

17   finances, caring for her ill mother and attending yoga classes. AR 25. Plaintiff's ability to

18   perform these activities is not a clear and convincing reason for rejecting her testimony. *See*

19   *Diedrich v. Berryhill,* 874 F.3d 634, 643 (9th Cir. 2017) ("House chores, cooking simple meals,

20   self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as

21   occasional shopping outside the home, are not similar to typical work responsibilities.").

22   The ALJ also found Plaintiff's testimony was inconsistent with her ability to work during

23   the period at issue. AR 25. "An ALJ may consider any work activity, including part-time work,

24

1    in determining whether a claimant is disabled." *Ford*, 950 F.3d at 1156.  In December 2020,

2    Plaintiff reported she was doing "some outside work for a contractor friend."  AR 633.  The

3    same month, she reported working three hours a day for a week.  AR 863.  In March 2021,

4    Plaintiff reported working 10 days in a row without a day off.  AR 857.  In June 2021, Plaintiff

5    reported working 20 hours over three days taping for a painter.  AR 624.  Plaintiff was still

6    working with the painter in July 2021, and reported working three days in a row.  AR 621, 847,

7    849.

8         During the hearing, the ALJ questioned Plaintiff about her work activity.  AR 84–86.

9    Plaintiff testified she was not actually working, but was instead doing things in the garage and

10   trying to help a friend with a bad back around the house.  AR 84–85.  In the hearing decision, the

11   ALJ cited Plaintiff's hearing testimony and the statements in the record inconsistent with that

12   testimony.  AR 23, 25.  Plaintiff's hearing testimony is inconsistent with statements made to her

13   medical providers concerning her activities during the period at issue.  *See* AR 623 ("Worked M,

14   T and Wed taping for a painter—about 20 hours over 3 days"), 633 ("Trying to do some outside

15   work with contractor friend"), 845 ("Worked 3 days in a row"), 848 ("Tried working could only

16   tolerate 3 days"), 857 ("Working the last 10 days without a day off"), 863 ("Feels exhausted after

17   doing about 3 hours of work daily for a week").  Plaintiff's work activity, and her inconsistent

18   statements concerning that activity, provide a clear and convincing reason for discounting her

19   testimony.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("In assessing the

20   claimant's credibility, the ALJ may use 'ordinary techniques of credibility evaluation,' such as

21   considering the claimant's reputation for truthfulness and any inconsistent statements in her

22   testimony.").

23

24

1    Accordingly, the ALJ has provided a clear and convincing reason for discounting

2    Plaintiff's symptom testimony.

3         1.    Fatigue

4    Plaintiff contends the ALJ improperly discounted her testimony concerning her fatigue.

5    (Dkt. No. 6 at 2–3.)  Plaintiff testified her chronic exhaustion makes it difficult to perform daily

6    tasks and that she often requires breaks and takes naps during the day.  AR 70–76, 262.  Plaintiff

7    asserted her chronic fatigue causes difficulties with memory and retaining information, and said

8    she has to rest frequently or bend over and rest her hands on her knees to breathe properly.  AR

9    262, 267.  Plaintiff claimed standing up makes her lightheaded and dizzy.  AR 267.

10   In evaluating Plaintiff's fatigue, the ALJ reasoned that: (1) physical examinations

11   conducted during the period were often normal, with Plaintiff exhibiting normal gait, balance,

12   and coordination, and (2) Plaintiff's fatigue symptoms improved, in part due to her participation

13   in yoga classes.  AR 23.

14   With respect to the ALJ's first reason, "[w]hen objective medical evidence in the record

15   is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as

16   undercutting such testimony."  *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022).  Here, the

17   record contains evidence consistent with the ALJ's conclusion, with physical examinations often

18   being normal and Plaintiff sometimes indicating that her fatigue symptoms were under control or

19   were improving.  *See* AR 372, 374, 386, 388, 392, 394, 395, 397, 400, 402, 404, 408, 410, 412,

20   415, 417–418, 420–421, 461, 801, 838, 869, 957, 961, 962, 964, 967, 969.

21   However, given the nature of Plaintiff's symptoms, which stem from chronic fatigue

22   syndrome ("CFS"), these physical examination results are not necessarily inconsistent with

23   Plaintiff's testimony.  CFS is a complex illness "characterized by severe disabling fatigue and a

24

ORDER AFFIRMING AND DISMISSING THE CASE - 5

combination of symptoms that prominently features self-reported impairments in concentration and short-term memory, sleep disturbances, and musculoskeletal pain." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 677 (9th Cir. 2011)  CFS  "is a systemic disorder that may vary in frequency, duration, and severity."  Social Security Ruling ("SSR") 14-1p.  The condition is defined as a "*self-reported* persistent or relapsing fatigue lasting six or more consecutive months." *Reddick v. Chater*, 157 F.3d 715, 726–727 (9th Cir. 1998) (italics in original).

As with other conditions that are diagnosed to a significant extent based on patient self-reports, physical examination results are often unrevealing in assessing the extent of the functional limitations imposed by Plaintiff's fatigue.  *See Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017) (cautioning against relying upon normal physical examination findings to discount medical opinions and claimant testimony concerning fibromyalgia, and noting that findings of normal muscle strength, tone, and stability, as well as a normal range of motion, are "perfectly consistent" with debilitating fibromyalgia, a condition diagnosed "entirely on the basis of patients' reports of pain and other symptoms.") (internal citations omitted).  Here, the fact that Plaintiff often demonstrated normal gait, balance, and coordination on examination is not necessarily inconsistent with her testimony, which indicates her fatigue manifested as exhaustion and a lack of energy rather than as deficits with mobility.  *See* AR 290, 295, 368–369, 376, 380, 411, 413, 439, 459, 460, 713, 809, 835.

As for the ALJ's second reason, "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).  Here, the ALJ cited several instances in 2018 when Plaintiff reported improvement in her fatigue symptoms, in part due to her participation in yoga.  AR 23, 372, 374, 384, 386, 388, 395, 398.  In finding that Plaintiff's fatigue improved with conservative measures such as

yoga, the ALJ has provided an additional clear and convincing reason for discounting Plaintiff's testimony concerning her fatigue. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.).

> 2. Mental Health Limitations

Plaintiff contends the ALJ erred in evaluating her testimony concerning the limitations imposed by her mental health impairments. (Dkt. No. 6 at 3–4.)

Plaintiff testified she cries, has emotional meltdowns, and freezes up when she gets frustrated or mad. AR 70, 77. She testified this happens nearly every day, and takes Ativan when her symptoms worsen. AR 71, 78. Plaintiff testified she has difficulties with concentration and completing tasks and cannot stay on task for more than a few minutes. AR 79. Plaintiff further alleged she has difficulty being around other people and cannot tolerate social interactions because of her meltdowns. AR 266.

In discounting Plaintiff's testimony concerning her mental health symptoms, the ALJ reasoned that: (1) Plaintiff's testimony was inconsistent with mental status examinations conducted during the period at issue; and (2) Plaintiff's symptoms improved with medication and therapy. AR 23–24.

With respect to the ALJ's first reason, the ALJ found that during examinations, Plaintiff was often engaged, calm, coherent, with logical thought process, normal speech, and no cognitive deficits or slowed movements. AR 23, 369, 374, 376, 382, 394, 397, 400, 402, 404, 410, 412, 415, 417, 420, 422, 425, 427–429, 431, 433, 435, 437, 439, 441, 443, 445, 447, 449–450, 452–453, 455, 457, 459–461. The ALJ reasoned that mental status examinations conducted during the period at issue revealed Plaintiff was typically fully oriented with normal speech,

normal thought content, relevant and logical thought processes, normal memory, normal fund of knowledge, and normal insight/judgment.  AR 24, 598, 601, 604, 607, 610, 613, 616, 619, 622, 625, 628, 631, 634, 637, 639, 641, 644, 647, 650, 652, 916, 920, 923, 926, 929, 932, 936.  The ALJ further reasoned that while Plaintiff sometimes exhibited low mood and affect, she also sometimes demonstrated neutral mood and affect.  AR 24, 916, 920, 923, 926, 929, 932, 936.

Here, in citing multiple instances in which the objective medical evidence is inconsistent with Plaintiff's testimony, the ALJ has provided another clear and convincing reason for discounting that testimony.  There is some evidence consistent with Plaintiff's allegations, including instances in which she exhibited anxiety, tearfulness, irritability and other symptoms during appointments.  AR 382, 402, 598, 601, 604, 607, 610, 616, 619, 625, 628, 637, 639, 647, 650, 652, 920, 936.  However, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

Accordingly, the ALJ has provided clear and convincing reasons for discounting Plaintiff's testimony concerning her mental health limitations.

3. Activities of Daily Living

Plaintiff contends the ALJ erred in discounting her testimony because she was able to perform certain activities of daily living.  (Dkt. No. 6 at 4–5.)  As discussed above, the ALJ's reference to these activities is not a clear and convincing reason to discount Plaintiff's testimony. *See supra* Section III.A.

**B.  Medical Opinion Evidence**

Plaintiff contends the ALJ erred in evaluating the opinion of psychologist Dr. David Widlan.  (Dkt. No. 6 at 6–7.)

ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness, with the two most important factors being "supportability" and "consistency." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022); 20 C.F.R. § 404.1520c(a).  Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion is consistent with other evidence from medical and nonmedical sources.  *See id*.; 20 C.F.R. § 404.1520c(c)(1), (c)(2).

Dr. Widlan examined Plaintiff on August 9, 2023.  AR 1061–1066.  Dr. Widlan's examination consisted of a clinical interview, a review of the medical records, and a mental status examination.  AR 1061–1063.  Based on the results of his examination, Dr. Widlan stated Plaintiff had deficits in memory, concentration, and social reasoning.  AR 1065.  Dr. Widlan opined Plaintiff could accept simple instructions, but that performing complex tasks would be too challenging for her.  AR 1065.  Dr. Widlan further opined Plaintiff could not persist with adequate pace and would become easily overwhelmed by task demands.  AR 1065.  Dr. Widlan stated she could not negotiate simple social stressors on a consistent and routine basis and had significant deficits in performing activities of daily living.  AR 1065.  Dr. Widlan opined Plaintiff met the mental health listings for Autism, Depression, and Anxiety.  AR 1065.

On September 2, 2023, Dr. Widlan completed a mental residual functional capacity assessment, finding that Plaintiff had a range of moderate, marked, and extreme limitations in work-related mental functioning.  AR 1098–1102.  Dr. Widlan opined that Plaintiff's mental impairments would interfere with her ability to work on a regular and sustained basis at least 20% of the time.  AR 1101.  Dr. Widlan further opined that Plaintiff would miss 18 days of work per month due to her impairments.  AR 1101.

1    The ALJ found Dr. Widlan's opinion unpersuasive, reasoning that: (1) the marked and

2  extreme limitations assessed by Dr. Widlan were unsupported by the treatment records and

3  Plaintiff's functioning during the relevant period; (2) the record indicates Plaintiff worked

4  during the relevant period; and (3) Dr. Widlan's assessment was completed well after the date

5  last insured.  AR 27.  For the reasons discussed above in connection with Plaintiff's symptom

6  testimony, the ALJ's first two reasons for discounting Dr. Widlan's opinion are supported by

7  substantial evidence.  *See supra* Section III.A.

8                                    **IV.    ORDER**

9    In summary, because the evidence is susceptible to more than one rational interpretation,

10  one of which supports the ALJ's decision, the Court is required to uphold the ALJ's decision.

11  *See Thomas*, 278 F.3d at 954.  Accordingly, the Court AFFIRMS the Commissioner's final

12  decision and DISMISSES the case with prejudice.

13

14    Dated this 12th day of June, 2025.

15

16

17    David G. Estudillo
      United States District Judge

18

19

20

21

22

23

24

ORDER AFFIRMING AND DISMISSING THE CASE - 10